UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

|  |  |  |
|---|---|---|
| MEDPOINTE HEALTHCARE INC., | : | |
| Plaintiff, | : | |
| v. | : | Civ. No. 08-1494 (PGS) |
| AXIS REINSURANCE COMPANY, | : | |
| Defendant. | : | **OPINION** |

This matter originally came before the Court on Defendant's motion to dismiss. On February 27, 2009, this Court converted the motion to dismiss to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). For the following reasons, this Court finds that summary judgment is not warranted and denies Defendant's motion.

I.

The facts are largely undisputed. The plaintiff is MedPointe Healthcare Inc., a New Jersey corporation in the business of manufacturing and distributing pharmaceuticals ("MedPointe"). The defendant is Axis Reinsurance Company, which is incorporated in the State of New York and maintains corporate headquarters in the State of Georgia ("Axis"). MedPointe purchased two employment practices liability insurance policies from Axis. The first policy provided coverage from September 28, 2003 until September 28, 2004 (the "2003-04 Policy"). The renewal policy provided coverage from September 28, 2004 until September 28,

2005 ("2004-05 Policy").  The policies are substantively similar; their only meaningful difference for purposes of this motion is their effective dates.  Under the heading "Declarations," both policies state that "this policy is written on a claims made and reported basis and covers only claims first made against the insureds during the policy period . . . ."  (2003-04 Policy at p. 1 and 2004-05 Policy at p. 6).  The policies provide that all claims must be reported "as soon as practicable after any of the Policyholder's Executive Officers first becomes aware of such Claim, but in no event later than sixty (60) days after the expiration of the Policy Period . . . ."  (2003-04 Policy at p. 1 and 2004-05 Policy at p. 1).

In this matter, Medpointe seeks coverage for an "Employment Practices Claim," which is defined in both policies as:

> (I)     a written demand against any Insured for monetary damages or  other relief,
>
> (ii)    a civil proceeding against any Insured commenced by the service of a complaint or similar pleading,
>
> (iii)   a formal, administrative, investigative or regulatory proceeding by or before the Equal Employment Opportunity Commission (EEOC) . . . against any Insured commenced by a notice of charges, formal investigative order or similar document . . . .

(2003-04 Policy at 6 and 2004-05 Policy at 6).

Medpointe brought the instant case to declare that Axis's denial of coverage in connection with *Smith v. MedPointe, et al.,* Civ. No. 2:04-cv-6315 was in error.  *Smith* was a case previously before me, wherein Conchita Smith filed a complaint for, *inter alia*, age, disability, and race discrimination against her employer MedPointe.  On February 15, 2007, I granted defendant's motion for summary judgment and dismissed plaintiff's claims with prejudice.  *Smith* is currently on appeal before the Third Circuit.  Some of the facts in *Smith* are

important to this case.

In *Smith*, the plaintiff, Ms. Smith, was terminated from her employment at MedPointe on October 13, 2003 after missing nearly 11 months of work during a 16-month period. Four days later, on October 17, 2003, Ms. Smith, through an attorney, sent a letter to Medpointe requesting reconsideration of her termination as well as full reinstatement. The letter states: "In conclusion, I find it greatly disturbing that my seventeen years of employment have ended with such abruptness and so out of my control. Please reconsider your position. I request reinstatement to my original position and territory." Following receipt of the letter, MedPointe declined to reconsider Ms. Smith's termination. On August 9, 2004, Ms. Smith brought an Equal Employment Opportunity Commission Charge in connection with her termination from MedPointe ("EEOC Charge"). The EEOC Charge alleged that Ms. Smith had been terminated from her employment at MedPointe due to her gender, age, race, and disability. On August 11, 2004, the EEOC sent a notice of the EEOC Charge to Mr. Wild, MedPointe Chairman and CEO. MedPointe received the notice on August 16, 2004. The notice informed MedPointe of the EEOC Charge and stated, "No action is required by you [MedPointe] at this time." On September 24, 2004, the EEOC sent a letter to Ms. Smith, copying Mr. Wild, that the EEOC was "closing its file on this charge" because Ms. Smith had failed to respond within 30 days, as required by the EEOC. The notification granted Ms. Smith the "right to sue" within 90 days of the dismissal of the EEOC Charge.

On December 22, 2004, the ninetieth day after the EEOC's dismissal of the EEOC Charge, Ms. Smith filed suit against MedPointe in this Court. On April 21, 2005, MedPointe was served with Ms. Smith's complaint. On April 27, 2005, MedPointe sent notification to Axis that it had been engaged in a lawsuit. Axis received MedPointe's notification the next day, April

28, 2005.  Axis initially denied MedPointe coverage on May 23, 2005.  Axis based its denial on the assertion that neither of the policies was triggered because a claim was not filed during the 2003-04 Policy when MedPointe first received the letter from Ms. Smith, seeking reinstatement, or after MedPointe was served with the EEOC Charge.

On April 22, 2008, MedPointe brought this suit against Axis seeking declaratory judgment that Axis has a duty to defend and indemnify MedPointe in connection with Ms. Smith's lawsuit.  Axis then brought a pre-answer motion to dismiss, arguing that Medpointe's claim is expressly excluded from coverage.  When this Court converted the motion to one for summary judgment, Axis argued that no material fact was in dispute because Medpointe's claim was not made and noticed during the policy period when MedPointe received both Ms. Smith letter requesting reinstatement and notice of the EEOC Charge.

II.

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial.  *Id.* at 324.  In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  Thus, the non-moving party may not rest upon mere allegations or denials in its pleadings. *See Celotex,* 477 U.S. at 324.  Further, the non-moving

party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 252 (3d Cir. 1999). Axis has two arguments to support its contention that summary judgment is appropriate.

Axis argues that summary judgment is appropriate because MedPointe did not provide notice of claims made against it by Ms. Smith's letter or by the EEOC Charge. Axis further argues that summary judgment is appropriate because MedPointe failed to disclose Ms. Smith's letter before entering into the 2004-05 Policy. First, Axis contends that Ms. Smith's October 17, 2003 letter was an Employment Practices Claim, which Medpointe failed to report, as required by the policy. According to Axis, the letter represents "a written demand against any Insured for monetary damages or other relief," which is one of the policy's definitions of Employment Practices Claim. (2003-04 Policy at Section III (C)(3)(I)). Here, there is no dispute that MedPointe received the letter. In her letter, Ms. Smith outlined the work she had most recently performed as an employee of MedPointe and tried to justify her significant absence. It is only in the last two lines of her letter that Ms. Smith requests that MedPointe reconsider the decision to terminate her employment and that she requests reinstatement to her original position and territory. The letter does not request damages or insinuate that a claim for discrimination is being made. The trier of fact could reasonably believe that the letter is not a claim, as Axis insists, but a reasonable request to return to work.

In addition to the above, there remains a factual dispute as to when MedPointe received a "claim" embodied in the letter. Nowhere in the letter does Ms. Smith allege that her termination was wrongful, only that it be reconsidered. Axis counters that because Ms. Smith's letter was faxed to MedPointe by a lawyer, the letter is adversarial in nature and should be seen by this Court as a "written demand." However, at oral argument it was first learned that Ms. Smith's

-5-

husband is the attorney from whose office the letter was faxed.  Given the relationship between Ms. Smith and her attorney/husband, genuine issues of material fact exist as to both the nature of the letter and if Ms. Smith actually obtained legal counsel, as Defendant argues.  Therefore, there remain questions of fact regarding whether Ms. Smith's letter constitutes a claim.  Summary judgment on this ground is not warranted[1].

Lastly, Axis argues that the EEOC Charge is a claim, which Medpointe failed to report, as required by the 2003-04 Policy.  Reviewing this policy, the EEOC Charge meets the definition of "Employment Practices Claim."  The EEOC Charge was an "administrative proceeding," before the EEOC against the insured, and was commenced by a notice of charges.  The EEOC Charge therefore fits squarely within the definition of Employment Practices Claim.  (*See* 2003-04 Policy at Sections III (B)(2)(ii) and (C)(3)(iii)).  Further, the EEOC Charge was sent to Mr. Wild, Chairman and CEO of MedPointe, clearly an "Executive Officer" as defined in Section III (A)(2) of the 2003-04 Policy.  Therefore, Mr. Wild's receipt of the EEOC Charge meant that MedPointe first became aware of the Claim on or around August 16, 2004.

However, there remain questions of fact as to whether MedPointe was obligated to report

---

[1] Defendant additionally argues that by not disclosing Ms. Smith's October 17, 2003 letter under Question 4 of the application for the 2004-05 Policy, Medpointe's claim for coverage from the *Smith* lawsuit is excluded from coverage under the 2004-05 Policy.  Question 4(a) requires the insured to inform Axis whether it is "cognizant of any . . . situation  . . . which he/she has reason to suppose might afford grounds for any Claim such as would fall within the scope of the proposed insurance.    Having already found that there are questions of fact as to whether Ms. Smith's letter is a claim, this Court cannot now rule that as a matter of law, Medpointe must have informed Axis of the letter in order to receive coverage under the 2004-05 Policy for the *Smith* lawsuit.   Some of the language of Question 4 is vague. *See Knoblock v. Prudential Property and Casualty Ins. Co.*, 615 A.2d 644, 646 (N.J. Super. Ct. App. Div. 1992) ("Where the language of an insurance policy is ambiguous or vague it must be given any reasonable interpretation that will provide coverage.")

the claim in order to receive coverage for the subsequent *Smith* lawsuit.  The pertinent language of the insurance policy states that a claim must be reported, "as soon as practicable after any of the Policyholder's Executive Officers first becomes aware of such Claim, but in no event later than sixty (60) days after the expiration of the Policy Period."  MedPointe first became aware of a claim on or around August 16, 2004 by letter that informed it of an EEOC Charge, and the letter provided that "No action is required by you at this time."  Soon after, by letter dated September 24, 2004, the EEOC again contacted Medpointe, this time to inform it that Ms. Smith's charge was dismissed and that the EEOC was closing its file on the charge, but Ms. Smith had the right to sue MedPointe.  From these facts, a reasonable executive may surmise that Smith's claim had been decided against her.   There is a genuine dispute as to whether Medpointe was obligated to report this claim in light of its dismissal. The brevity of the EEOC investigation combined with the language used to communicate the existence of the EEOC Charge and its quick dismissal create a question of fact as to whether MedPointe failed to satisfy a duty to report.

As for the period prior to dismissal of the EEOC Charge, the time between when the claim arose and was dismissed amounts to a little less than one and a half months.  It is a question of fact as to whether Medpointe's failure to notify Axis during this period amounts to a failure to notify the insurer "as soon as practicable."  It is not clear as to how soon an insured must provide notification under a "soon as practicable" standard; however, the policy's 60-day threshold, as to when a claim must be reported after the expiration of the policy, provides some leeway for MedPointe.  Therefore, a reasonable juror could find that Medpointe did not violate its duty to report "as soon as practicable."

Because Defendant has offered no argument in which material facts are not in dispute, this Court cannot grant summary judgment under Rule 56(c).  Defendant's motion for summary judgment is hereby denied.


<u>s/Peter G. Sheridan</u><br>
PETER G. SHERIDAN, U.S.D.J.

March 31, 2009